**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIFFANY GILES<br>2033 Clinton Avenue<br>Chambersburg, PA 17201 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff,<br>v. | : <br> : <br> : | No. _____ |
| PRIORITY HEALTHCARE GROUP, LLC<br>99 W. Hawthorne Avenue, Suite 508<br>Valley Stream NY 11580<br>and<br>MEADOWS AT GETTYSBURG FOR<br>NURSING AND REHABILITATION, LLC<br>741 Chambersburg Road<br>Gettysburg, PA 17325 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**I. INTRODUCTION**

1. This action has been initiated by Tiffany Giles (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq*.) and the Pennsylvania Minimum Wage Act ("PMWA" – 43 P. S. §§ 333.101, *et. seq*.). Plaintiff asserts herein that she was not paid overtime compensation in accordance with state and federal law(s). As a direct consequence of Defendants' actions, Plaintiff seeks damages as set forth herein.

**II. JURISDICTION AND VENUE**

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. There is supplemental jurisdiction

over Plaintiff's state-law claims herein because they arise out of the same common nucleus of operative facts as Plaintiff's federal claim(s) set forth in this lawsuit.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III. **PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Priority Healthcare Group, LLC (hereinafter, "Defendant PHG") is a corporate entity incorporated in Delaware and headquartered in New York, at the above-captioned address. This entity, as explained *ad nauseum infra*, owns and operates many medical and long-term healthcare facilities (several of which Plaintiff worked within).

8. Meadows at Gettysburg for Nursing and Rehabilitation LLC (hereinafter, "Defendant MGN") is a corporate entity incorporated in the Commonwealth of Pennsylvania. Numerous fictitious business names operating as nursing homes or long-term care facilities are registered to Defendant MGN. This entity is utilized as a Pennsylvania-based corporation by

Defendant PHG to operate several of Defendant PHG's Pennsylvania-based long-term healthcare facilities.[1]

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV.  FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. The crux of this lawsuit is that Plaintiff (during a finite period of time and towards the end of her employment tenure): (a) was required to work at 3 separate locations of Defendants; (b) they are a single enterprise and business operation; and (c) Plaintiff was only paid straight time (not time and one half) for hours worked over 40 unlawfully.

**[A] Plaintiff is a non-exempt, hourly-paid employee.**

12. Plaintiff was hired by Defendants in or about early 2019; and in total, Plaintiff has been employed with Defendants for approximately 3 years (and remains employed with Defendants).

13. Plaintiff has only worked for Defendants as a Dietitian. In this capacity, she has been paid an hourly rate of $32.00 per hour for each hour worked for Defendants.

14. Plaintiff would never meet the "primary duties" test to be exempt under any applicable FLSA exemption pursuant to 29 U.S.C. § 213. But such analysis is unnecessary herein as **no** employee can meet a state or federal overtime exemption **wherein, they are paid**

---

[1] The web of companies or entities is not fully transparent, and thus this Complaint may be amended to include additional entities. Additionally, a the PMWA and FLSA expressly provide for individual liability, responsible individuals for overtime violations will be individually amended to this lawsuit upon learning of same during discovery. This footnote is provided herein for *notice purposes* only.

**<u>hourly</u>"** (as in the instant case). *See e.g*. 29 C.F.R. § 541.300 (the first element of an FLSA exemption requires demonstration by an employer of the employee being paid *a "salary."*). Plaintiff was **<u>never</u>** paid a salary, was always paid hourly, and her pay fluctuated each pay period.

### [B] <u>Plaintiff was not paid overtime compensation during a finite period, from in or about February of 2021 through the present (a period of roughly 1 year).</u>

15. Plaintiff was initially hired as a part-time, per diem dietitian paid hourly (working as little as 16 hours per week).

16. Plaintiff's hours gradually increased during her tenure. As of in or about February of 2021, Plaintiff began working at least 45 hours per week. By in or about April of 2021, Plaintiff was working at least 60-70 hours per week.

17. Defendants were undergoing staffing problems and were floating Plaintiff between 3 separate nursing homes wherein she was working tremendous overtime to help the organization.

18. As of this lawsuit, it is estimated that Plaintiff will have worked approximately 900 - 1,100 <u>overtime</u> hours (from February 2021 – February 2022) wherein she was paid at her straight $32 hourly pay rate <u>instead of</u> at a statutorily mandated rate of time and one half (of $48.00 per overtime hour). As a result, Plaintiff was not paid the additional half time of an extra $16.00 per hour for each hour of overtime worked from 2021 – 2022.

### [C] <u>Just as Defendants have no defense relative to any exemption status, Defendants have no defense that Plaintiff's floating (or simultaneous work) at 3 locations was for a single business or enterprise requiring overtime compensation.</u>

19. Defendant PHG, a Delaware corporation headquartered in New York, purchased approximately 12 long-term care facilities in or about 2017 after the attorney general initiated a lawsuit for negligent care against many such facilities.

4

20. Three (3) of the approximate twelve (12) facilities purchased by Defendant PHG included locations doing business as: (a) the Gardens at Gettysburg for Nursing and Rehabilitation; (b) the Gardens at West Shore for Nursing and Rehabilitation; and (c) the Gardens at York Terrace. These are the 3 facilities in which Plaintiff physically worked for Defendants during the time period of February of 2021 through February of 2022.

21. Defendant PHG has owned, operated, hired for, and set all policies within its facilities including those wherein Plaintiff has worked. All operational decisions as to facilities operated by Defendant PHG take place either from its Eddystone, PA location or Valley Stream, NY location (the two primary locations of Defendant PHG).

22. Long-term care facilities publicly doing business as the Gardens of Gettysburg, the Gardens at West Shore, and the Gardens at York Terrace are merely "fictitious" business names registered with the Pennsylvania Department of State. Such fictitious business names are all registered to Defendant MGN (which is operated *in its entirety* by Defendant PHG). And as explained below, Defendant PHG is identified as the "owner" of Defendant MGN facilities in corporate filings.

23. Despite whatever names are assigned to each long-term care facility for public optics, they are just one business enterprise. By way of additional examples, the articles of incorporation for the Gardens at York Terrace identify it's operated by its "owner" at 99 W. Hawthorne Avenue, Suite 508 Valley Stream, NY 11580 (which is Defendant PHG). And both other facilities wherein Plaintiff worked (the Gardens at West Shore and the Gardens of Gettysburg) are also identified in articles of incorporation within the Pennsylvania Secretary of State as being registered with the "owner," Defendant PHG.

24. Defendant PHG advertises publicly on its website and social media as operating all skilled nursing facilities and employing over 500 employees. In press releases, Defendant PHG acknowledges operating the aforesaid facilities, engaging in team building within its facilities, and being responsible for awards and achievements within their facilities.[2]

25. Due to extreme staffing needs at Defendant PHG's facilities, Plaintiff was directed to work at 3 separate facilities of Defendants (as outlined *supra*). In doing so, Plaintiff ***never*** had to: (a) reapply for any jobs at different facilities; (b) go through any employment or background screening checks at any different facilities / locations; (c) she was merely told which of Defendants' locations to work at each week; and (d) Plaintiff followed the same policies, practices and rules that were uniform at all of Defendant's locations. **It is irrefutable that Defendants operate a single business with numerous locations**.

26. All of Plaintiff's paychecks had significantly different and sometimes unrelated fictitious business names on them from each location wherein she worked for Defendants (or even others), but the common denominator was that all such paychecks were issued ***by Defendant PHG's Eddystone, PA location***.

**[D] Defendants' liability and Plaintiff's damages**

27. Although Defendants are solely a single business *and* single enterprise regardless of names used for public advertising purposes, it would be of no moment or relevance even **if** they were truly operated as separate legal entities *sharing* an employee. An employee is statutorily entitled to overtime pay for working over 40 hours per week for a single business enterprise ***or*** a joint employer.[3]

---

[2] *See e.g.* https://www.timesleader.com/features/717391/priority-healthcare-group-recognizes-administrators

[3] *See e.g. Chao v. A-One Med. Servs.*, 346 F.3d 908, 918 (9th Cir. 2003)(affirming judgment and liquidated damages against employer(s) and explaining that an employee working for different health care locations of 2

6

28.  Plaintiff raised numerous concerns to different levels of management about non-payment of overtime (inclusive of nursing home administration), and her complaints were ignored. Moreover, there is simply no defense to the fact that an employer is obviously obligated to legally pay overtime despite transferring an employee to different locations of its operation(s). Defendants' actions as aforesaid of issuing different checks under fictitious business names not only lack good faith, they are fraudulent.

29.  Plaintiff is owed approximately $15,000.00 - $20,000.00 in unpaid overtime compensation alone. What Plaintiff is owed *as a matter of right* from non-payment during her employment does not take into consideration her "automatic" entitlement to "liquidated damages."[4] Plaintiff is entitled to **double** her unpaid overtime compensation.

---

separate entities (in the same overall business enterprise) receiving different payroll was clearly entitled to overtime pay under statutory overtime analysis); *Villareal v. El Chile, Inc*., 776 F. Supp. 2d 778, 780 (N.D. Ill. 2011)(entering judgment for plaintiff as to overtime violations where being directed to work at multiple restaurants, although incorporated differently); *Audino v. Glob. IVR Sols., LLC,* 2020 U.S. Dist. LEXIS 11520, at *26 (W.D.N.Y. 2020)(awarding unpaid overtime and liquidated damages to employee being used at multiple locations, as single or joint employers are legally obligated to aggregate hours and pay overtime properly).

[4] *See e.g*. *Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

30. In total, Plaintiff is owed approximately $30,000.00 - $40,000.00 in unpaid overtime compensation (with liquidated damages), ***and*** she is also entitled to mandatory legal fees and other applicable damages (such as costs and interest) under state and federal law(s). *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

### Count I
### Violations of the Fair Labor Standards Act ("FLSA")
(Unpaid Overtime Compensation)

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. With unpaid overtime compensation, liquidated damages, attorney's fees, and costs / interest, Plaintiff is indisputably owed overtime compensation as outlined in detail throughout this Complaint.

33. Plaintiff has set forth Defendants' liability for unpaid overtime compensation in violation of the FLSA herein (and all actions outlined in this lawsuit therefore comprise Plaintiff's entitlement to backpay for compensation and damages). Defendants' actions of non-payment of overtime constitute violations of the FLSA.

### Count II
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
(Failure to Pay Overtime Compensation)
- Against All Defendants -

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Defendants' failure to pay overtime in the aforesaid manner(s) also constitutes a violation of the PMWA, as the PMWA is analyzed identically to the FLSA under applicable Third Circuit jurisprudence.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting overtime violations;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to back pay, overtime, interest, penalties, and costs;

C. Plaintiff is to be awarded all actual damages;

D. Plaintiff is to be awarded liquidated damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G. Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Ari R. Karpf, Esquire
3331 Street Road
Bensalem, PA 19020
(215) 639-0801

Dated: February 14, 2022